HALL, Judge.
Plaintiff, owner of the vessel “Diana Lee”, sued the defendant, charterer of the vessel, for the loss of profits resulting from defendant’s alleged repudiation and breach of their contract. Following trial on the merits judgment was rendered in plaintiff’s favor for $3,290.00 together with legal interest thereon from date of judicial demand until paid and for costs. Defendant appealed.
The facts as revealed by the record are as follows:
In the year 1961, prior to the contract in suit here, defendant, having contracted to construct an oil tank at Pilot Town, chartered the “Diana Lee” from plaintiff for the ' purpose of transporting its workmen from Venice to the job site and back each day. The tank job was completed in May or June of 1961 and the charter terminated. Sometime in 1962 defendant contracted to construct a second tank at Pilot Town. In the fall of 1962 as the result of a long distance telephone conversation between Mr. Kinghorn, defendant’s regional manager, and plaintiff, defendant agreed to charter the “Diana Lee” for this job which was to begin sometime near the end of 1962. Mr. Kinghorn and plaintiff disagree as to exactly when the conversation took place and who originated the call but there is no disagreement between them either as to the substance or the details of the conversation. It was to the effect that defendant wished to hire the boat on the same terms and conditions as in 1961. These terms and conditions were discussed and agreed upon during this conversation. The agreed price was to be $50.00 per day for five days a week. The duration of the contract was, in Mr. Kinghorn’s words, to be “from the start to the finish of the job.” The vessel was to be furnished complete and seaworthy by the owner. The owner was to furnish the operator of the vessel at his own expense, but all gasoline, oil, and other supplies were to be furnished by defendant. All of the terms were agreed to by the parties over the telephone.
On November 24, 1962 plaintiff prepared and mailed to defendant a charter-party for his signature. The charter-party was signed by defendant and returned to plaintiff by return mail. It incorporated the exact terms that both parties testified were agreed to over the telephone, and requires no comment except for one clause which we quote as follows, and will mention later; viz.:
“That this charter shall be for a term of Five (5) days per week commencing at start of job, and continue until notice is given by CHARTERER to OWNER of forty-eight (48) hours notice of termination of said charter. That if CHARTERER desires said boat for additional days, the OWNER must be so notified.”
From the time Mr. Kinghorn returned the charter to plaintiff there was no further contact between the parties until December 26, 1962. On December 26, 1962 Mr. Kinghorn wrote to plaintiff as follows:
“December 26, 1962
“Mr. A1 Ittman [sic]
Lake Avenue
New Orleans, Louisiana
“Reference: Boat Rental
“Dear Sir:
“At the time we erected our first tank for the Texas Company, we rented your boat the ‘Dianna [sic] Lee’ as a crew boat to transport employees from Pilot-town to the job site. However, there *537 was an agreement that the boat would be put in first class shape for this operation. When we talked of renting the boat it was in quite a mess, and you promised that everything would be ‘shipshape’ by the time our crews arrived.
“During the erection of the first tank, Mr. W. A. Rose complained to this office that you had not done anything toward cleaning the boat up. I really didn’t think it was as bad as Rose said and didn’t see fit to call you on it.
“I was in Venice last Thursday and looked over your boat. It is in even worse shape than it was the first time we rented it. Also, several people told me that the Coast Guard would not approve your boat for this type of work until you had made certain improvements on it.
“So, with this in mind, we do not plan to use your boat for our next tank as you have not done the things that you promised to do.
Very truly yours,
(sgd.) Johs S. Kinghorn
John S. Kinghorn
Regional Construction Manager
Gulf Coast Region”
Subsequent to the letter of December 26, 1962, Mr. Kinghorn rented another boat for the transportation of his employees. Defendant commenced construction of the second tank on January 14, 1963 and finished the job on May 29, 1963. During this whole period plaintiff kept the “Diana Lee” at Venice, ready to perform under his contract with defendant, and on June 25, 1963 filed this suit for his loss of profits.
Defendant contends that under the clause of the charter-party quoted supra it had the unqualified right to terminate the •contract without cause simply by giving •48 hours notice of termination.
This contention is contrary to the interpretation placed on the clause by both parties to the contract. Both plaintiff and defendant testified clearly that they considered that the contract could be cancelled only for cause. Both agreed that the clause did not give defendant the arbitrary right to cancel at pleasure.
Defendant further contends that it had good cause for cancelling the contract. Mr. Kinghorn testified that he understood he was only entitled to cancel it for cause, and stated that the causes for cancellation relied on by him were those expressed in his letter of December 26, 1962 and later repeated in a letter to plaintiff dated May 14, 1963. Those causes are (1) that the vessel was in filthy and deplorable condition and was not “shipshape”, and (2) that he was informed the vessel could not pass a Coast Guard inspection for the type of work for which it was chartered.
However it appears from Mr. Kinghorn’s testimony that the only complaint he had with reference to the condition of the boat was that when he inspected it he found open cans with food in them on the tables and that empty bottles were scattered about the below deck area. If this condition actually existed it could be remedied by the simple expedient of throwing the cans and bottles over the side. It could hardly be ground for cancellation of a mul-ti-thousand dollar contract. As opposed to this complaint we not only have plaintiff’s testimony, but that of Mr. Roselius E. Giordano, a wholly disinterested witness, both experienced boatmen, that the “Diana Lee” was well maintained and shipshape in every way during the whole period in question. The District Judge evidently did not think this complaint was a substantial one, and neither do we.
Mr. Kinghorn further testified that he was told by some persons standing around the dock that the “Diana Lee” could not pass a Coast Guard inspection. He did not recall who his informants were. How *538 ever the record shows that on May 5, 1961 the Coast Guard had issued a Certificate of Inspection to plaintiff covering the “Diana Lee”, good for three years. An annual inspection of the “Diana Lee” was made by the Coast Guard on April 12, 1962 as a result of which certain requirements were made. According to plaintiff every one of these requirements was met, and in addition thereto plaintiff had the decks repaired in the fall of 1962.
We are of the opinion, as was the District Judge, that there was no justification for defendant’s repudiation of the contract. We are of the further opinion that defendant’s refusal to go through with the icontract, absent any justification therefor, and his hiring of another boat, constituted an active breach of the contract.
But defendant points out that plaintiff did not reply to its letter of December 26, 1962 and made no protest at all until March 25, 1963 when plaintiff’s attorney made demand on it. Defendant contends that plaintiff’s failure for three months to protest its decision to withdraw from the contract as expressed in the letter of December 26, 1962 constituted a tacit cancellation of the contract by mutual consent.
Since defendant had actively breached the 'contract by affirmatively “doing something inconsistent with the obligation” (See LSA-C.C. Art. 1931) plaintiff was under no obligation to put defendant in default (See LSA-C.C. Art. 1932) and could sue for damages at any time thereafter. No duty rested upon plaintiff to respond to defendant’s letter or to place defendant in default as a prerequisite to suit. Since plaintiff was under no duty to protest it cannot be said that his silence amount to acquiescence in the cancellation, or that he lost any of his rights by failure to protest sooner.
The record reveals that plaintiff was at all times ready, able and willing to perform his part of the contract.
The damages due plaintiff are the profit of which he has been deprived by defendant’s repudiation of the contract (See LSA-C.C. Art. 1934). The contract price was $50.00 per day, five days per week, during construction of the tank. Construction began January 14, 1963 and continued to May 29, 1963. During this period of time defendant’s crew required transportation to the job site on 94 working days. Therefore plaintiff would have earned $4,700.00 gross. The only expense plaintiff would have had would have been the captain’s wages of $15.00 per day or a total of $1,410.00. Deducting this item we arrive at a total of $3,290.00 representing plaintiff’s loss of profits.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by defendant-appellant.
Affirmed.